# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>OSCAR E. GARCIA and<br>HODELIA GARCIA,<br><br>Debtors. | Bankruptcy Case<br>No. 10-40937-JDP |

| | |
|---|---|
| GARY L. RAINSDON,<br>Trustee,<br><br>Plaintiff,<br>vs.<br><br>ANGEL GARCIA and<br>EDITH GARCIA,<br><br>Defendants. | Adv. Proceeding<br>No. 11-8016-JDP |

## MEMORANDUM OF DECISION

**Appearances**:

William Hollifield, HOLLIFIELD LAW OFFICE, Twin Falls, Idaho, Attorney for Plaintiff.

Kent Jensen, Burley, Idaho, Attorney for Defendants.

MEMORANDUM OF DECISION – 1

### *Introduction*

On May 12, 2011, a Motion for Summary Judgment was filed in this

adversary proceeding by Defendants Angel and Edith Garcia

("Defendants").  Dkt. No. 10.  Plaintiff Gary L. Rainsdon ("Plaintiff"), the

trustee in the chapter 7[1] bankruptcy case of Oscar and Hodelia Garcia

("Debtors"), opposed the motion.  Dkt. No. 18.  The Court heard oral

argument on the motion on July 26, 2011, after which the Court permitted

the parties to submit additional briefing.  Dkt. No. 20.  Thereafter, the

motion was taken under advisement.  The Court has considered the

submissions of the parties, the arguments of counsel, as well as the

applicable law.  This Memorandum disposes of the motion.  Fed. R. Bankr.

P. 7052; 9014.

### *Facts*

The material facts are not in dispute.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.  All "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 2

Debtors formerly owned a house located at 114 Oregon Street, in Gooding, Idaho ("the Property"). Debtors lived at the Property, paid the mortgage payments to Zion's Bank, paid the real property taxes due, and maintained an insurance policy on the Property.

Debtor Oscar Garcia and Defendant Angel Garcia are brothers. On June 20, 1998, Debtors entered into a Rent to Own Agreement ("RTO Agreement") concerning the Property with Defendants. Dkt. No. 19, Ex. A. The RTO Agreement required Defendants to: 1) "make the $315 [mortgage] payment for [Debtors] to Zions Bank" each month; 2) pay the real property taxes on the Property as they became due; 3) pay the $25 monthly premium for the insurance policy covering the Property; and 4) pay all utilities in Defendants' names. The RTO Agreement further provided:

> When [Defendants] have paid off the mortgage at Zions National Bank, [Debtors] agree to provide [Defendants] with a Warranty Deed and clear title to this property with no debt owing.

*Id*.

The RTO Agreement referred to the Property solely by its street

MEMORANDUM OF DECISION – 3

address; no legal description was included.  The parties' signatures on the

RTO Agreement were not acknowledged or notarized.  *Id*.  Although

executed by the parties on June 20, 1998, the RTO Agreement was not

recorded in the Gooding County real property records until April 13, 2000.

*Id*.

Defendants took possession of the Property.  On October 18, 2008,

over ten years after executing the RTO Agreement, a second agreement

was entered into by the parties, apparently in response to Defendants'

desire to allow a third party to move onto the Property prior to completion

of the mortgage payments and transfer of title from Debtors to

Defendants.  Dkt. No. 19, Ex. B.  This second agreement, entitled simply

"Contract," recites that Debtors are the owners of the Property, and

Defendants are the purchasers.  *Id*.  It reiterates Defendants' obligation to

pay taxes and certain utilities, and notes that Defendants agree to pay $312

per month, and any late fees or other expenses, until a current balance of

$14,402.64 is paid in full.  *Id*.  The Contract further requires Defendants to

keep the Property clean and in good repair, and to maintain the grounds.

MEMORANDUM OF DECISION – 4

*Id*.  Finally, the Contract expressly prohibits Defendants from leasing,

renting or allowing occupancy of the Property by another party until

payment of the monetary obligations has been made in full.  *Id*.

Like the RTO Agreement, the Contract contains only a street address

for the Property.  While the signatures of both Defendants on the Contract

are acknowledged, only Oscar Garcia signed the Contract on behalf of

Debtors; Hodelia's signature does not appear on the document.  The

Contract was not recorded.  *Id*.

Some time in October 2009,[2] Defendants made the last payment on

the mortgage to Zions Bank.  Belatedly true to their word, on April 6, 2010,

Debtors executed and gave Defendants a warranty deed, transferring title

to the Property to Defendants.  Dkt. No. 19, Ex. C.  The warranty deed

contains a legal description of the Property, Debtors' signatures as the

---

[2]  There is a discrepancy in the facts concerning the precise date
Defendants paid off the mortgage.   In the Amended Complaint, Plaintiff alleges
that it occurred on October 21, 2009.  Dkt. No. 21, ¶ 11.  On the other hand, in
their Reply Brief, Defendants allege that the debt was paid off on October 6, 2009.
Dkt. No. 24, p. 4.  The discrepancy is not material to resolution of the legal issues
raised by Defendants' motion.

MEMORANDUM OF DECISION – 5

grantors are properly acknowledged, and the deed was recorded. *Id.*

On May 27, 2010, Debtors filed a chapter 7 bankruptcy petition.

Case No. 10-40937-JDP Dkt. No. 1. Plaintiff was appointed to serve as the

trustee in the case, and on February 17, 2011, he commenced this

adversary proceeding against Defendants seeking to avoid the transfer of

the Property from Debtors to Defendants. Dkt. No. 1. Defendants filed an

answer to the adversary Complaint, Dkt. No. 7, and later, the instant

summary judgment motion, Dkt. No. 10.

### *Summary Judgment Standard*

This Court recently summarized the standard for resolving

summary judgment motions:

> In adversary proceedings before the
> bankruptcy court, the familiar summary
> judgment standard established in Federal Rule of
> Civil Procedure 56 applies. See Fed. R. Bankr. P.
> 7056; *North Slope Borough v. Rogstad (In re*
> *Rogstad)*, 126 F.3d 1224, 1227 (9th Cir. 1997).
> Summary judgment is proper when "the
> pleadings, the discovery and disclosure materials
> on file, and any affidavits show that there is no
> genuine issue as to any material fact and that the
> movant is entitled to judgment as a matter of

MEMORANDUM OF DECISION – 6

law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Id.* at 256-57, 106 S.Ct. 2505. The court must view all the evidence in the light most favorable to the nonmoving party. *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir. 2001).

In response to a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir. 1991).

A court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v. INS*, 436 U.S. 748, 756, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

MEMORANDUM OF DECISION – 7

for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct.
2505.

*Gugino v. Wells Fargo Bank Northwest, N.A. (In re Lifestyle Home Furnishing,*

*LLC)*, 10.1 IBCR 23, 23 (Bankr. D. Idaho 2010) *(quoting Barboza v. New Form,*

*Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008).[3]

### *Analysis and Disposition*

In his amended complaint, Plaintiff alleges three distinct claims for

relief.  Defendants argue none of those claims have merit.  As requested in

Defendants' motion, the Court considers whether summary judgment is

appropriate as to each claim in turn.

1.    Avoidance of the Transfer under § 544(a).

Plaintiff first seeks to avoid the transfer of the deed and title to the

Property from Debtors to Defendants under a Bankruptcy Code provision

---

[3]  Although Federal Rule of Civil Procedure was substantially amended
effective December 1, 2010, the Advisory Committee Notes provide that the
"standard for granting summary judgment remains unchanged.  The language of
subdivision (a) continues to require that there be no genuine dispute as to any
material fact and that the movant be entitled to judgment as a matter of law.  The
amendments will not affect continuing development of the decisional law
construing and applying these phrases."

MEMORANDUM OF DECISION – 8

known affectionately to bankruptcy trustees as the "strong arm clause."

Section 544(a) provides, in relevant part, that

> (a) The trustee shall have, as of the
> commencement of the case, and without regard
> to any knowledge of the trustee or of any
> creditor, the rights and powers of, or may avoid
> any transfer of property of the debtor or any
> obligation incurred by the debtor that is voidable
> by —
> * * *
>> (3) a bona fide purchaser of real property,
>> other than fixtures, from the debtor, against
>> whom applicable law permits such transfer
>> to be perfected, that obtains the status of a
>> bona fide purchaser and has perfect such
>> transfer at the time of the commencement
>> of the case, whether or not such a
>> purchaser exists.

11 U.S.C. § 544(a)(3).

This statute grants a bankruptcy trustee the power to avoid any

transfer that could be defeated by a hypothetical bona fide purchaser

("BFP") for value under state law. *Chase Manhattan Bank, USA, N.A. v.*

*Taxel (In re Deuel)*, 594 F.3d 1073, 1076 (9th Cir. 2010). State law governs

the rights of Plaintiff, as a hypothetical BFP, as against Defendants.

MEMORANDUM OF DECISION – 9

*Wonder-Bowl Props. v. Kim (In re Kim)*, 161 B.R. 831, 834 (9th Cir. BAP 1993);

*Rainsdon v. Mullen (In re Mullen)*, 402 B.R. 353, 357 (Bankr. D. Idaho 2008)

(quoting *Michael v. Martinson (In re Michael)*, 49 F.3d 499, 501 (9th Cir.

1995))**.**  Key to the instant case, however, is that under the plain wording of

the statute, the trustee's hypothetical BFP status is measured *as of the*

*commencement of the case*.

  Plaintiff apparently contends that because the RTO Agreement and

the Contract failed to comply with Idaho's statute of frauds for real

property agreements, both contracts would be unenforceable as against a

hypothetical BFP.  *Ray v. Frasure*, 200 P.3d 1174, 1177 (Idaho 2009) (citing

*Hoffman v. S V Co., Inc.)*, 628 P.2d 218, 221 (Idaho 1981)); *Ricks v. Kastera,*

*LLC (In re Ricks)*, 433 B.R. 806, 818 (Bankr. D. Idaho 2010).  However, when

viewed as of the petition date, the agreement between Debtors and

Defendants memorialized in the RTO Agreement and Contract was a

completed transaction.

   When Debtors filed their petition, § 541(a) operated to create an

estate which included all of their interests in property.  However, as the

MEMORANDUM OF DECISION – 10

transaction between Debtors and Defendants had been completed, and the deed had been delivered and properly recorded, Debtors no longer held any cognizable interest in the Property on the petition date, and thus it did not become property of their bankruptcy estate.  *See Murphy v. Wray (In re Wray)*, 01.1 IBCR 15, 18 (Bankr. D. Idaho 2001) ("the mere filing of bankruptcy does not expand [Debtors' property] rights beyond what existed under applicable nonbankruptcy law at filing.").  Moreover, because the deed had been recorded, notice had been given to the world about the change in ownership of the Property.  Under Idaho law, a transfer of an interest in real property is perfected as against a BFP of that property when the instrument of conveyance is properly recorded.  Idaho Code § 55–812; *Estate of Skvorak v. Security Union Title Inc. Co.*, 89 P.3d 856, 862 (Idaho 2004); *Sun Valley Land and Minerals, Inc. v. Burt*, 853 P.2d 607, 612 (Idaho App. 1993).  Thus, Plaintiff may not utilize his status as a hypothetical BFP to unwind the completed transaction under these facts.

In other words, because Plaintiff may not use § 544(a)(3) to avoid Debtors' transfer of the warranty deed to Defendants, the Court will grant

MEMORANDUM OF DECISION – 11

summary judgment to Defendants on this claim for relief.

2.      Avoidance of the Transfer Under § 547(b).

        In the alternative, Plaintiff argues that he may avoid the transfer of

the Property from Debtors to Defendant as a preference.  The Code allows

a trustee to recover transfers made by debtors to their favored creditors

shortly before filing for bankruptcy relief:

> [T]he trustee may avoid any transfer of an
> interest of the debtor in property—
>> (1) to or for the benefit of a creditor;
>> (2) for or on account of an antecedent debt
>> owed by the debtor before such transfer
>> was made;
>> (3) made while the debtor was insolvent;
>> (4) made-
>>> (A) on or within 90 days before
>> the date of the filing of the petition; .
> . .
> . . . .
>> (5) that enables such creditor to receive
>> more than such creditor would receive if-
>>> (A) the case were a case under
>>> chapter 7 of this title;
>>> (B) the transfer had not been made;
>>> and
>>> (C) such creditor received payment
>>> of such debt to the extent provided
>>> by the provisions of this title.

MEMORANDUM OF DECISION – 12

11 U.S.C. § 547(b).[4]

Here, many of the elements required to establish an avoidable preference are undisputed.  For example, there is no doubt that, via the warranty deed, Debtors made a "transfer" of their remaining interest in the Property to Defendants.  Under Idaho law, the transfer of legal title to the Property from Debtors to Defendants occurred when they delivered the deed to them with the intent that the deed be operative.  *Barmore v. Perrone*, 179 P.3d 303, 307-08 (Idaho 2008); *Defendant A. v. Idaho State Bar*, 978 P.2d 222, 224-25 (Idaho 1999).  Moreover, this transfer occurred within 90 days of the filing of Debtor's bankruptcy petition.[5]  § 547(e)(1)(A)

---

[4] While Debtors retained legal title to the Property until the deed was delivered to Defendants, they had arguably transferred the beneficial interest in the Property to Defendants when the RTO Agreement was executed, and then finally recorded, in 1998 and 2000, respectively.  Given that these events occurred years prior to Debtors' bankruptcy filing, any transfer of their beneficial interest would not be avoidable by Debtors' trustee under § 547(b).

[5] Since Defendants were relatives of the Debtors, the preference "reach back" period for this transaction was actually one year.  *See* § 547(b)(4)(B) (preference period is one year prior to petition date if transfer is to an "insider"); § 101(31)(A)(i) (definition of insider includes relatives of an individual debtor); § 101(45) (definition of relative includes those related to debtor by affinity or consanguinity within third degree).

MEMORANDUM OF DECISION – 13

(transfer of real property occurs for preference purposes when it is

enforceable as against a BFP); Idaho Code § 55-812 (in Idaho, transfer of

real property is effective against a BFP when deed is recorded).  In

addition, under § 547(f), Debtors were "presumed to have been insolvent

on and during the 90 days immediately preceding the date of the filing of

the petition."  Finally, when the Court takes judicial notice of its own

docket and, in particular, reviews Debtors' schedules of debts and assets

filed in this chapter 7 case,[6] it appears that Defendants' receipt of the "full

value" of the Property via the warranty deed enabled them to receive

more than they would have received had that transfer not been made, and

had Defendants been required to participate pro-rata in distributions to

creditors in the bankruptcy case.[7]

---

[6] Although a copy of the Debtors' bankruptcy petition and schedules
were not made a part of the record in the adversary proceeding, under Fed .R.
Evid. 201(c), the Court may take judicial notice of its official docket, and under
Fed. R. Evid. 801(d)(2), it may consider the statements made in Debtors'
schedules as admissions.  *In re Schweizer*, 354 B.R. 272, 278 n.3 (Bankr. D. Idaho
2006); *In re Moore*, 01.4 I.B.C.R. 147, 149 n.7 (Bankr. D. Idaho 2001).

[7] Debtors' Summary of Schedules indicates $232,321.31 in liabilities and
$198,814.70 in assets.  BK Case No. 10-40937-JDP Dkt. No. 1.  In addition, most of
Debtors' assets are exempt from liquidation.

MEMORANDUM OF DECISION – 14

However, for preference purposes, what is less clear on these facts is whether the transfer of title to the Property from Debtors to Defendants was, in the words of the Code, made "on account of an antecedent debt" owed by Debtors to Defendants as required by §§ 547(b)(1) and (2). Resolution of this issue implicates a question of law, not fact. *Upstairs Gallery, Inc. v. Macklowe West Dev. Co., L.P. (In re Upstairs Gallery, Inc.)*, 167 B.R. 915, 917 (9th Cir. BAP 1994).

Plaintiff contends that when Defendants paid off the Zion's Bank loan in October 2009, Debtors at that point became obliged to tender an executed warranty deed for the Property to Defendants. When they did not do so for several months, Plaintiff contends a cause of action for breach of contract for money damages or specific performance arose, in Defendants' favor as against Debtors. Thus, when Debtors ultimately fulfilled their duty to deliver a deed to Defendants in April, 2010, they effectively satisfied Defendants' claim against them.

Was Debtors' delivery of the deed to Defendants, in legal effect, a transfer to creditors on account of an antecedent debt? The Bankruptcy

MEMORANDUM OF DECISION – 15

Code defines "creditor" to include "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor . . . . " § 101(10)(A).  Debtors' filing of their voluntary chapter 7 petition constituted an order for relief.  § 301(b).  A "claim" for bankruptcy purposes is, in turn, defined as a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).  Finally, "debt" is defined by the Code as "liability on a claim." § 101(5).  Because the definition of claim is so broad, generally speaking, "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in [a] bankruptcy case . . . ." *In re Upstairs Gallery, Inc.*, 167 B.R. at 917-18 (quoting *In re Vasu Fabrics, Inc.*, 39 B.R. 513, 517 (Bankr. S.D.N.Y. 1984)).

MEMORANDUM OF DECISION – 16

In this case, the RTO Agreement makes clear that when Defendants

completed payments to Zion's Bank, an obligation arose for Debtors to

transfer title to the Property to Defendants.  Had Debtors not given them

the deed before they filed their bankruptcy petition, Defendants would

have held a potential claim in Debtors' bankruptcy case for breach of the

parties' contract.  Under Idaho law, Debtors' failure to deliver title under

these facts may have subjected Debtors to Defendants' claims for both

money damages, and for specific performance of the parties' contract.

*Kessler v. Tortoise Dev., Inc.*, 1 P.3d 292, 298 (Idaho 2000) (damages may be

inadequate in an action for breach of a real estate purchase and sale

agreement due to the uniqueness of land, so the equitable remedy of

specific performance may be appropriate).  Accordingly, Debtors were

indebted to Defendants at the time they received the deed from Debtors.

The converse is also true:  Defendants were creditors of Debtors until title

to the Property was finally transferred to them.

But while Debtors were technically "indebted" to Defendants to

transfer title, was this an "antecedent" debt for preference purposes?  In

MEMORANDUM OF DECISION – 17

order to make this determination, the Court must consider when the debt was incurred. *Krommenhoek v. Estate of Pfankuch Food Services, Inc. (In re Pfankuch)*, 393 B.R. 18, 25 (Bankr. D. Idaho 2008).

As this Court has explained, "[a] debt is incurred when the debtor first becomes legally bound to pay." *In re Pfankuch*, 393 B.R. at 25 (quoting *In re CHG Int'l, Inc.*, 897 F.2d at 1486, *abrogated on other grounds by Union Bank v. Wolas*, 502 U.S. 151 (1991)).

Pursuant to the terms of the RTO Agreement, Debtors were obligated to transfer a warranty deed and clear title to the Property "[w]hen [Defendants] have paid off the mortgage at Zions National Bank." There appears to be no dispute that Defendants paid off the Zion's Bank mortgage some time in October, 2009. Therefore, Debtors were legally bound to transfer the deed to Defendants at that time. As a result, Debtors' April 2010 delivery of the deed constituted payments on an antecedent debt owed to Defendants before the transfer was made.

In sum, the facts to satisfy the elements of an avoidable preference seem to have been established in this action. Thus, Defendants' motion for

MEMORANDUM OF DECISION – 18

summary judgment on Plaintiff's claim for relief under § 547(b) will be

denied.

3.       Avoidance of the the Transfer Under § 548(a).

Finally, Plaintiff alleges that Defendants were the recipients of a

constructively fraudulent transfer from Debtors, avoidable by a trustee

under powers granted to him by both § 548(a) and § 544(b).

Section 548(a) provides as follows:

> (a)(1) The trustee may avoid any transfer
> (including any transfer to or for the benefit of an
> insider under an employment contract) of an
> interest of the debtor in property, or any
> obligation incurred by the debtor, that was made
> or incurred on or within 2 years before the date of
> the filing of the petition, if the debtor voluntarily
> or involuntarily—
> . . .
> (B)(i) received less than a reasonably equivalent
> value in exchange for such transfer or obligation;
> and
> (ii)(I) was insolvent on the date that such transfer
> was made or such obligation was incurred, or
> became insolvent as a result of such transfer or
> obligation[.]

MEMORANDUM OF DECISION – 19

11 U.S.C. § 548(a)(1)(B).[8]  As can be seen, to avoid a transfer under this

provision, Plaintiff as trustee must show that a "transfer" of Debtors'

property occurred within two years of the filing of the bankruptcy petition;

that the debtor received less than "reasonably equivalent value in exchange

for the transfer"; and that the transfer occurred either while the debtor was

insolvent, or that the debtor was rendered insolvent as a result of the

transfer.  *Id.*  Plaintiff bears the burden of proving all these elements by a

preponderance of the evidence.  *Jordan v. Kroneberger (In re Jordan)*, 392 B.R.

428, 440, 447 (Bankr. D. Idaho 2008) (citing *Krommenhoek v. Natural Res.*

*Recovery, Inc. (In re Treasure Valley Opportunities, Inc.)*, 166 B.R. 701, 703

(Bankr. D. Idaho 1994)).

    As noted above, Debtors' grant of a warranty deed on the Property

in favor of Defendants constitutes a transfer for purposes of the Code.  As

this transfer occurred less than two months prior to the bankruptcy filing,

---

    [8] Section 548(a)(1)(A) empowers a trustee to avoid a transfer intended by
the debtor to hinder, delay or defraud a creditor.  However, Plaintiff  has not
alleged that Debtors acted with fraudulent intent, and the Court will consider
only whether the transfer of the deed constitutes a "constructively fraudulent"
transfer under § 548(a)(1)(B).

MEMORANDUM OF DECISION – 20

it was clearly within the time frame provided in § 548(a).

Plaintiff must also demonstrate that Debtors received less than "reasonably equivalent value in exchange for the transfer."  In his briefing, Plaintiff simply does not address this issue.  Instead, the Court surmises[9] that he contends that the RTO Agreement and the Contract are unenforceable as a matter of law, and thus Debtors' transfer of the warranty deed was, in essence, a transfer by Debtors to Defendants for no consideration.  In the alternative, perhaps Plaintiff thinks an avoidable transfer occurred because Debtors delayed the transfer of the warranty deed to Defendants by some eight months, such that the transfer of the Property from Debtors to Defendants essentially "settled" their cause of action for breach of contract.  The Court  consider each theory below.

*A.  Statute of Frauds.*[10]

---

[9] Of course, the Court is reluctant to speculate about Plaintiff's legal arguments.  It is Plaintiff's responsibility to clearly explain the factual and legal basis of his claims against Defendants.  The Court undertakes this analysis in this case solely to give Plaintiff "the benefit of the doubt", and in the interests of justice and prompt resolution of this action.

[10] Section 558 provides that any defenses available to Debtors are likewise available to Trustee.  The Court concludes that the application of § 558 is not

MEMORANDUM OF DECISION – 21

Perhaps Plaintiff contends that Debtors transferred the Property to

Defendants for no consideration because the parties' contracts supporting

the transfer were unenforceable as a matter of law due to their failure to

satisfy the statute of frauds.  Assuming this is Plaintiff's position,

Defendants argue that the statute of frauds is inapplicable to this

transaction because the RTO Agreement and Contract had been wholly, or

at least partially, performed.

The state statute of frauds applicable to real estate transfers is found

in Idaho Code § 9-503, which provides:

> No estate or interest in real property, other than
> for leases for a term not exceeding one (1) year,
> nor any trust or power over or concerning it, or in
> any manner relating thereto, can be created,
> granted, assigned, surrendered or declared,
> otherwise than by operation of law, or a
> conveyance or other instrument in writing,
> subscribed by the party creating, granting,

---

appropriate here, because Plaintiff is using the statute of frauds, not as a defense
to any claim, but offensively in an attempt to undo Defendants' purchase of the
Property.  Section 558 is not an avoidance mechanism in its own right, but rather
allows Plaintiff, as trustee, to utilize defenses personal to Debtors on behalf of the
estate.  *In re McMurdie*, 448 B.R. 826, 829 n.6 (Bankr. D. Idaho 2010).

MEMORANDUM OF DECISION – 22

> assigning, surrendering or declaring the same, or
> by his lawful agent thereunto authorized by
> writing.

Idaho courts have construed this statute to not only require that

contracts for the sale of real property be in writing, but that they also

include other essential components.  Relevant here, for example,

> While the Idaho statues do not specifically require
> a description of real property in the instrument of
> conveyance, Idaho courts have always required a
> description of the property or a reference to
> extrinsic evidence which describes the property
> being conveyed in order to satisfy the statute of
> frauds.  In [*Ray v. Frasure*], the Idaho Supreme
> Court stressed that such a property description
> must "adequately describe the property so that it
> is possible for someone to identify 'exactly' what
> property the seller is conveying to the buyer."

*In re McMurdie*, 448 B.R. at 830 (quoting *Ray,* 200 P.3d at 1178) (citing

*Garner v. Bartschi*, 80 P.3d 1031, 1036 (Idaho 2003)).  In *Ray*, the Idaho

Supreme Court reaffirmed the standard explained in *Garner* that "'[a]

description contained in a deed will be sufficient [under Idaho's statute of

frauds] so long as quantity, identity or boundaries of property can be

determined from the face of the instrument, or by reference to extrinsic

MEMORANDUM OF DECISION – 23

evidence to which it refers.'" *Ray*, 200 P.3d at 1178 (quoting *Garner*, 80 P.3d at 1036).

In this case, neither the RTO Agreement or the Contract include any legal description for the Property; each contain only a street address. The Idaho Supreme Court in *Ray* specifically held that "a property description in a real estate contract consisting solely of a physical address does not satisfy the statute of frauds." *Ray*, 200 P.3d at 1177; *see also In re McMurdie*, 448 B.R. at 830. Accordingly, under the Idaho case law, the RTO Agreement and Contract would likely not satisfy the requirements of the statute of frauds. In Idaho, "[a]greements for the sale of real property that fail to comply with the statute of frauds are unenforceable both in an action at law for damages and in a suit in equity for specific performance." *Ray*, 200 P.3d at 1177 (citing *Hoffman*, 628 P.2d at 221); *In re Ricks*, 433 B.R. at 818.

B.  *The Part Performance Exception to Idaho's Statue of Frauds.*

The Idaho statute of frauds for transfers of real property "must not be construed . . . to abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof." Idaho

MEMORANDUM OF DECISION – 24

Code § 9-504; *see also Simons v. Simons*, 11 P.3d 20, 23 (Idaho 2000); *Jolley v.*

*Clay*, 103 Idaho 171, 177, 646 P.2d 413, 419 (Idaho 1982); *Hoffman v. S V Co.*,

102 Idaho 187, 191, 628 P.2d 218, 222 (Idaho 1981). Under the doctrine of

part performance, "when the parties to an agreement fail to reduce the

agreement to writing, or otherwise fail to satisfy the statute of frauds, the

agreement 'may nevertheless be specifically enforced when the purchaser

has partly performed the agreement.'" *Bauchman-Kingston P'ship, LP v.*

*Haroldsen*, 233 P.3d 18, 23 (Idaho 2008) (citing *Chapin v. Linden*, 162 P.3d

772, 775 (Idaho 2007)); *Simons*, 11 P.3d at 23.

While Defendants insist that the parties' performance would allow

them to enforce their rights under the RTO Agreement and Contract,

Plaintiff contends that the doctrine of part performance is only applicable

to save oral contracts, and is of no help to Defendants under these facts

because the parties' contracts were written. The Court disagrees. While it

is correct that most of the reported Idaho cases applying the doctrine of

MEMORANDUM OF DECISION – 25

part performance involve oral contracts,[11] this exception to the statute of frauds has not been so limited.  Indeed, the Idaho Supreme Court has considered a part performance claim in the context of a written contract at least twice.  *Simons*, 11 P.3d at 23; *Bauchman-Kingston P'ship*, 233 P.3d at 20.

In *Simons*, like here, the parties' real estate contract failed to satisfy the statute of frauds due to an inadequate property description.  11 P.3d at 23-24.  However, the court did not invalidate the contract.  Where one of the parties had agreed to convey certain property in exchange for specific consideration, and the other party had indeed delivered that consideration, the court decided that the contract could be enforced.  *Id.* at 23.

*Bauchman-Kingston* also involved a real estate contract, unenforceable under the Idaho statute of frauds due to an inadequate property description.  233 P.3d at 20.  However, in that case, the parties had not agreed upon the consideration to support the sale, and the Idaho

---

[11]  *See, e.g., Dunagan v. Dunagan*, 213 P.3d 384 (Idaho 2009); *Chapin v. Linden*, 162 P.3d 772 (Idaho 2007); *Corder v. Idaho Farmway, Inc.*, 986 P.2d 1019 (Idaho App. 1999); *Hinkle v. Winey*, 895 P.2d 594 (Idaho App. 1995); *Bear Island Water Ass'n, Inc. v. Brown*, 874 P.2d 528 (Idaho 1994); *Mikesell v. Newworld Dev. Corp.*, 840 P.2d 1090 (Idaho App. 1992).

MEMORANDUM OF DECISION – 26

Supreme Court distinguished *Simons* and declined to enforce the contract

under the part performance exception.

Curiously, Plaintiff cites *Ray, supra,* for support.  However, the

questions decided by the Idaho Supreme Court in *Ray* were "whether a

physical address in a real estate contract sufficiently describes the property

for purposes of the statute of frauds," and whether the district court had

correctly ruled concerning an alleged oral modification of the closing date

and breach of the contract.  200 P.3d at 1176.  While it appears the

prospective purchaser of the property in *Ray* did fully perform its

obligations under the agreement, there is no discussion in the decision of

the doctrine of part performance as an exception to the statute of frauds.

Because of the doctrine is not mentioned, it appears that it was never

raised in the trial court.

Based upon this review of the Idaho case law, the Court concludes

that the doctrine of part performance may apply to save a written contract

for the transfer of real estate which otherwise fails to satisfy the statute of

frauds.  This seems sensible, since if part performance is available to

MEMORANDUM OF DECISION – 27

enforce an oral agreement, there is little reason to ignore the doctrine in

cases where the parties have at least attempted to reduce their agreements

to writing, albeit incompletely, and where one party acted upon that

agreement.[12]

  C. *Application of the Part Performance Doctrine to the Undisputed Facts.*

  The Court concludes that the part performance exception to Idaho's

statute of frauds applies in favor of Defendants under the facts presented

here.

  Both the RTO Agreement and Contract indisputably evidence the

parties' intent that the Property be transferred from Debtors to Defendants

---

  [12] As discussed above, the Idaho Supreme Court has held that the doctrine of part performance is implicated "when the parties to an agreement fail to reduce the agreement to writing, *or otherwise fail to satisfy the statute of frauds . . . .*" *Bauchman-Kingston*, 233 P.3d at 23 (citing *Chapin v. Linden*, 162 P.3d 772, 775 (Idaho 2007) (emphasis supplied).  On the other hand, the Court acknowledges language in a later decision explaining that "Idaho recognizes the doctrine of partial performance, which is an exception to the statute of frauds that permits a court to compel specific performance of an agreement *not in writing* that has been partly performed." *Dunagan*, 213 P.3d at 386 (citing *Simons* and *Bear Island Water*, 874 P.2d at 533) (emphasis supplied).  However, as both *Simons* and *Bear Island* involved written, not oral, agreements, the Court presumes that the Idaho Supreme Court did not  intend to limit the availability of the doctrine of part performance to oral contracts by its dicta in *Dunagan*.

MEMORANDUM OF DECISION – 28

when the mortgage was paid off.  There is also no dispute that the parties

acted in accordance with the terms of those contracts.  After execution of

the RTO Agreement, Defendants took possession of the Property, living in

and caring for the house for several years, all the time while making the

monthly mortgage payments directly to Zions Bank.  After some delay,

Debtors complied with the contracts by executing and delivering a deed to

the Property after Defendants had satisfied the mortgage.  As can be seen,

there is no question here concerning the parties' "part performance"; this is

a case where both parties have fully performed their contracts.

Accordingly, if indeed Plaintiff contends that Debtors made a

constructively fraudulent transfer to Defendants because the underlying

contracts were unenforceable under the statute of frauds, the Court

concludes as a matter of law that this claim cannot be sustained.

*D.  Transfer in Satisfaction of a Claim.*

Alternatively, if Plaintiff alleges that Debtors transferred the

Property in satisfaction of a claim Defendants had against them for breach

of contract, Plaintiff still has the burden to prove that the transfer was for

MEMORANDUM OF DECISION – 29

less than reasonably equivalent value.

No evidence has been submitted to the Court on this question.  The
absence of proof that the transfer to Defendants of the deed was not
"reasonably equivalent value" is a problem for Plaintiff, because, as the
Ninth Circuit recently reminded us:

> [There is a] shifting burden of proof [which
> governs] motions for summary judgment under
> Federal Rule of Civil Procedure 56.  The moving
> party initially bears the burden of proving the
> absence of a genuine issue of material fact.
> *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
> Where the non-moving party bears the burden of
> proof at trial, the moving party need only prove
> that there is an absence of evidence to support the
> non-moving party's case.  *Id*. at 325.  Where the
> moving party meets that burden, the burden then
> shifts to the non-moving party to designate
> specific facts demonstrating the existence of
> genuine issues for trial.  *Id*. at 324.  This burden is
> not a light one.  The non-moving party must
> show more than the mere existence of a scintilla
> of evidence.  *Anderson v. Liberty Lobby, Inc.*, 477
> U.S. 242, 252 (1986).  The non-moving party must
> do more than show there is some "metaphysical
> doubt" as to the material facts at issue.  *Matsushita
> Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.
> 574, 586 (1986).  In fact, the non-moving party
> must come forth with evidence from which a jury

MEMORANDUM OF DECISION – 30

> could reasonably render a verdict in the
> non-moving party's favor. *Anderson*, 477 U.S. at
> 252.  In determining whether a jury could
> reasonably render a verdict in the non-moving
> party's favor, all justifiable inferences are to be
> drawn in its favor.  *Id*. at 255.

*In re Oracle Corp. Sec. Litigation*, 627 F.3d 376, 387 (9th Cir. 2010); *see also In re Pfankuch*, 393 B.R. at 21-22.

Defendants, as the moving party, had the initial burden to show the absence of a genuine issue of material fact concerning Plaintiff's constructive fraud claim.  They have done so; both parties agree that there are no disputed genuine issues of fact.  Consequently, since Plaintiff bears the burden of proof at trial, the burden shifts to Plaintiff to "designate specific facts demonstrating the existence of genuine issues for trial," and in fact, Plaintiff "must come forth with evidence from which a jury could reasonably render a verdict in [his] favor." *Id*.

Plaintiff has not satisfied his burden. Defendants paid off Debtors' mortgage to Zions Bank, and in return, received title to the Property from Debtors.  The Court has no evidence before it from which it could

MEMORANDUM OF DECISION – 31

reasonably infer that the amounts paid by Defendants to Zions Bank was somehow less than the debt relief Debtors received in exchange for the deed to the Property.[13]

If Plaintiff is contending that Debtors transferred the deed in order to satisfy Defendants' demands because they intended to sue Debtors for breach of contract, Plaintiff's showing also fails.  Presumably Defendants' claim for damages against Debtors would be measured in large part by the sums Defendants paid to Zion's Bank.  As a result, the question again becomes whether Debtors' satisfaction of that claim for damages by tender of the deed was for less than reasonably equivalent value.  As noted above, Plaintiff has submitted no evidence in that regard.

On the other hand, if Defendants' potential breach of contract action against Debtors was one in equity for specific performance, then the satisfaction of that judgment would be exactly what Debtors gave the Defendants here:  the deed to the Property.  While the Court is mindful

---

[13]  The Code provides that "value" under this section can mean "satisfaction or securing of a present or antecedent debt of the debtor".  11 U.S.C. § 548(d)(2)(A).

MEMORANDUM OF DECISION – 32

that the issue of whether Debtors received a reasonably equivalent value is

analyzed from the point of view of their creditors, *Jordan v. Kroneberger (In*

*re Jordan)*, 392 B.R. 428, 441 (Bankr. D. Idaho 2008) (citing *Hopkins v. D.L.*

*Evans Bank (In re Fox Bean Co.)*, 287 B.R. 270, 281 (Bankr. D. Idaho 2002), it

would be a difficult case indeed for Plaintiff to contend that Debtors

received less than reasonably equivalent value under those circumstances.

In addition, under § 548(a), Plaintiff must show that Debtors were

either insolvent on the date the transfer to Defendants was made, or that

they became insolvent as a result of the transfer.  Plaintiff has also failed to

offer any evidence to support this proposition.

Because Plaintiff has not met his burden of proof under Civil Rule

56, a grant of summary judgment to Defendants is proper on the § 548(a)

claim.

4.     <u>Avoidance of the Transfer Under Idaho Code § 55-913</u>.[14]

---

[14]  Plaintiff alleges a fraudulent transfer under Idaho Code § 55-910, *et seq.*
However, that section merely includes the definitions governing Idaho's
fraudulent transfer statutes.  Idaho Code § 55-913 designates the transfers
deemed fraudulent by the Idaho Legislature.

MEMORANDUM OF DECISION – 33

The analysis in the preceding section would also apply to Plaintiff's claims for relief under § 544(b),[15] incorporating Idaho Code § 55-913, which provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> > (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > 1. was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > > 2. intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond

---

[15] Section 544(b) enables a bankruptcy trustee to avoid any transfer of property that an unsecured creditor with an allowable claim could have avoided under applicable state law. *Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1111 (9th Cir. 2010); *Magic Valley Evangelical Free Church, Inc. v. Fitzgerald (In re Hodge)*, 220 B.R. 386, 389 n.1 (D. Idaho 1998).

MEMORANDUM OF DECISION – 34

his or her ability to pay as they
became due.

Plaintiff does not allege that Debtors transferred the Property to

Defendants in an attempt to intentionally defraud their creditors.  Again,

Plaintiff presumably contends that a constructively fraudulent transfer

occurred.  But even so, as explained above, Plaintiff has presented no facts

to show that the transfer from Debtors to Defendants occurred without

reasonably equivalent value in exchange.  Thus, Defendants are also

entitled to a summary judgment on this issue.

### Conclusion

Plaintiff may not use § 544(a) to avoid the Debtors' transfer of title to

the Property to Defendants because on the petition date, the transaction

had been completed and Debtors no longer had any interest in the

Property.  Accordingly, summary judgment will be granted to Defendants

on this claim for relief.

However, the Court concludes that the facts in the record support

Plaintiff's argument that the transfer of the title to the Property by Debtors

MEMORANDUM OF DECISION – 35

to Defendants was an avoidable § 547(b) preference.  Defendants'

summary judgment motion will be denied on this claim.

Finally, the Court grants summary judgment to Defendants on

Plaintiff's constructive fraudulent transfer claims, under both § 548(a) and

Idaho law.

A separate order will be entered.

Dated: October 3, 2011

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 36